UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| IKELENE BOH, | Case No. 2:23-cv-00198-EJY |
| Plaintiff, | |
| v. | **ORDER** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Ikelene M. Boh ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security Administration ("Commissioner" or "Defendant") finding Plaintiff was not disabled under Title II and XVI of the Social Security Act. ECF No. 14. The Commissioner filed a Response and Cross-Motion to Affirm. ECF Nos. 19, 20. Plaintiff did not reply.

**I.    Background**

Plaintiff filed an application for disability benefits on July 21, 2016. Administrative Record ("AR") 239-54. The Social Security Administration initially denied Plaintiff's application initially on November 28, 2016, and upon reconsideration on March 22, 2017 after which Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 61-88, 93-120, 140-41. The ALJ held a hearing on March 1, 2019. AR 42-60. On July 25, 2019, the ALJ issued a decision finding Plaintiff was not disabled from her alleged onset date through the date of the decision. AR 17-39. Plaintiff requested review of the ALJ's decision that was denied by the Appeals Council. AR 1053-58. Plaintiff sued to challenge that decision, and on July 2, 2021, this Court concluded the ALJ failed to give specific and legitimate reasons for rejecting opinion evidence and issued an Order granting in part Plaintiff's Motion for Reversal and/or Remand and denying in part Defendant's Cross-Motion to Affirm. *Boh v. Saul*, Case No. 2:20-CV-00350-EJY, 2021 WL 2772554, at \*1 (D. Nev. July 2, 2021). On July 27, 2022, another hearing was held before an ALJ. AR 982-1029. On November 23, 2022, the ALJ issued a decison finding Plaintiff was not disabled from her alleged onset date through the date of the decision. AR 947-981. Plaintiff now seeks judicial review of the

Commissioner's decision under 42 U.S.C. § 405(g), requesting the Commissioner's final decision be vacated and this matter be remanded for a *de novo* hearing and decision.  ECF No. 14.

## II.     Standard of Review

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Biestek v. Berryhill*, 587 U.S. --, 139 S.Ct. 1148, 1154 (2019)).  In reviewing the Commissioner's alleged errors, the Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion."  *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986) (internal citations omitted).

"When the evidence before the ALJ is subject to more than one rational interpretation, … [the court] must defer to the ALJ's conclusion."  *Batson*, 359 F.3d at 1198, *citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  However, a reviewing court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision."  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal citation omitted).  And, a court may not reverse an ALJ's decision based on a harmless error.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation omitted).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## III.    Establishing Disability Under the Act

To establish whether a claimant is disabled under the Social Security Act, there must be substantial evidence that:

> 1. the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> 2. the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

2

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), *citing* 42 U.S.C. § 423(d)(2)(A). "If a claimant meets both requirements, he or she is disabled." *Id*. (internal quotations omitted).

The ALJ uses a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (internal citation omitted); 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. *Tackett*, 180 F.3d at 1098.

The five steps consider:

Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. 20 C.F.R. § 404.1520(b).

Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. 20 C.F.R. §§

3

404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits. *Id*.

**IV.    Summary of ALJ's Decision**

The ALJ applied the 5-step sequential analysis under 20 C.F.R. § 404.1520 and determined Plaintiff met the insured status requirements of the Social Security Act through September 30, 2017. AR 953. The ALJ found Plaintiff had not engaged in substantial gainful activity since January 1, 2016, her alleged disability onset date (step one). *Id*. The ALJ concluded Plaintiff had the following severe impairments: status post rotator cuff tear surgery, degenerative disc disease of the lumbar and cervical spine, osteoarthritis of the hips, degenerative enthesopathy of the left humerus, epicondylitis/radial tunnel syndrome, left trigger finger, left thumb osteoarthritis, De Quervain's tenosynovitis, anxiety/panic disorder, bipolar disorder, and post-traumatic stress disorder (step two). *Id*. The ALJ then found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (step three). AR 955.

In preparation for step four, the ALJ determined Plaintiff retained the residual functional capacity ("RFC")[1] to perform light work, except Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently; can sit, stand, and walk for 6 hours in an 8-hour workday and can push and pull as much as she can lift and carry; can operate foot controls with her right and left foot frequently; can operate hand controls with her left hand frequently; can occasionally reach overhead to the left and right; for all other reaching, can reach frequently to the left and right; can handle items frequently with her left hand, but has fingering and feeling limitations to frequently with the left; can climb ramps and stairs occasionally and can never climb ladders, ropes, or scaffolds; can stoop, kneel, crouch, and crawl occasionally; can never work at unprotected heights; can work around moving mechanical parts occasionally and operate a motor vehicle occasionally; can work in extreme heat and cold occasionally and in moderate noise; can understand, remember and carry out simple tasks that can be learned in 30 days or less; and is able to interact with supervisors frequently and co-workers and the public occasionally. AR 957. At step four the ALJ found Plaintiff was

---

[1] The RFC is the most a claimant can still do in a work setting despite impairment related limitations and is based on all the evidence in the record. 20 C.F.R. § 404.1545(a)(1).

unable to perform any past relevant work, but considering her age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Plaintiff could perform. AR 969. The ALJ then concluded Plaintiff was not disabled (step five). AR 971.

In reaching his conclusions, the ALJ considered and rejected opinions from Dr. Ethan Cruvant, M.D., and Elsa Villglobos, LCSW.[2] AR 967-68.[3] On May 4, 2017, Dr. Cruvant diagnosed Plaintiff with "systemic lupus, neuropathy, tailbone fracture, and shoulder pain." AR 432. Dr. Crvant opined Plaintiff's "symptoms associated with [her] impairments [would be] severe enough to interfere with the attention [and] concentration required to perform simple work-related tasks … constantly." Id. Dr. Cruvant indicated Plaintiff would "need to recline or lie down during a hypothetical 8-hour workday in excess of the typical 15-minute break in the morning, the 30-60 minute lunch, and the typical 15-minute break in the afternoon"; can walk zero city blocks without rest or significant pain; can sit only one hour and stand/walk zero hours in an 8-hour workday; and would need to take unscheduled one-hour breaks "constantly[,] every 5 minutes." Id. Dr. Cruvant indicated Plaintiff could lift and carry less than and equal to 10 pounds occasionally, but never lift 20 or 50 pounds. Id. Dr. Cruvant noted Plaintiff has "limitations in doing repetitive reaching, handling, or fingering," and could only use her left hand, fingers, and arm 15% of the time during an 8-hour workday. Id. Dr. Cruvant stated Plaintiff "is likely to be absent from work as a result of [her] impairments or treatments … [m]ore than four times a month." AR 433.

On June 13, 2022, Ms. Villglobos diagnosed Plaintiff with Post-Traumatic Stress Disorder, Depression, Obsessive-Compulsive Disorder, and Bipolar Disorder. AR 1727. Ms. Villglobos stated Plaintiff had marked limitations in the following areas: "[t]he ability to follow one- or two-step oral instructions to carry out a task"; "[t]he ability to use reason and judgment to make work-related decisions"; "[t]he ability to initiate and perform a task the patient knows how to do"; "[t]he ability to work at an appropriate and consistent pace, or complete tasks in a timely manner"; "[t]he ability to work close to or with others without interrupting or distracting them"; "[t]he ability to

---

[2] Plaintiff refers to this individual as "Elsa Villalobos." ECF No. 14 at 2. However, her name is spelled "Villglobos" in the Administrative Record, including in the ALJ's opinion. AR 8, 968, 981, 1726. Therefore, the Court uses the Administrative Record's spelling.

[3] The ALJ considered other opinions that Plaintiff does not challenge; therefore, the Court does not discuss them.

1  adapt to changes"; "[t]he ability to distinguish between acceptable and unacceptable work performance"; "[t]he ability to set realistic goals"; "[t]he ability to make plans independently of others"; "[t]he ability to maintain personal hygiene and attire appropriate to a work setting"; "[t]he ability to be aware of normal hazards and take appropriate precautions"; "[t]he ability to handle conflicts with others"; and "[t]he ability to respond to requests, suggestions, criticism, correction and challenges." AR 1727-29. Ms. Villglobos found Plaintiff had extreme limitations in "[t]he ability to ignore or avoid distractions while working"; "[t]he ability to sustain an ordinary routine and regular attendance at work"; "[t]he ability to work a full day without needing more than the allotted number or length of rest periods during the day"; "[t]he ability to manage psychologically based symptoms"; and "[t]he ability to keep social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness." AR 1728-29. Ms. Villglobos opined Plaintiff "has a long history of severe trauma" that supports her assessment. AR 1729.

V.   **Discussion**

A.   <u>The ALJ Properly Considered Dr. Cruvant's Opinion</u>.

Because Plaintiff filed her claim on July 21, 2016, the old rules for weighing medical evidence apply. *Kristen Noel R. v. Kijakazi*, Case No. 20-CV-04134-SK, 2021 WL 5449050, at *3 (N.D. Cal. Nov. 22, 2021). Under these rules, the Social Security Administration distinguishes "among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the patient." *Id.* (quotation marks omitted). *See also* 20 C.F.R. § 404.1527(c)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). "While the opinion of a treating physician is thus entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to

greater weight than that of a non-examining physician." *Garrison*, 759 F.3d at 1012 (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quotation marks omitted). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight ... even if it does not meet the test for controlling weight.'" *Id*. quoting *Orn v. Astrue,* 495 F.3d 625, 633 (9th Cir. 2007). The ALJ can show the specific and legitimate reasons are supported by "substantial evidence" by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998). "The ALJ must do more than [state] conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citation omitted).

Plaintiff argues the ALJ did not properly weigh Dr. Cruvant's opinion. ECF No. 14 at 28. Plaintiff contends that because Dr. Cruvant was a treating physician, the ALJ was required to give his opinion controlling weight unless the ALJ identified specific and legitimate reason not to, which the ALJ failed to do. *Id.* at 28, 30-33. Plaintiff argues the ALJ's failure to properly weigh Dr. Cruvant's opinion is harmful because had his opinion been properly credited, the limitations Dr. Cruvant identified would have supported a disability finding. *Id.* at 35.

Defendant counters that Dr. Cruvant's opinion offered "extreme limitations" that were not supported by his own treatment and exam findings and were inconsistent with contemporaneous imaging; thus, the ALJ's rejection of Dr. Cruvant's opinion was justified and supported by substantial evidence. ECF No. 19 at 6-8.

Dr. Cruvant's medical opinion was contradicted by state agency non-examining physicians Dr. Jennifer Ankton and Dr. Mindy Lokshin who found Plaintiff could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk about 6 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday, with no limitations in her ability to push and/or pull. AR 82-83, 102-03. Based on these contradictions the ALJ did a specific analysis of the

1  facts and conflicting clinical evidence in Dr. Cruvant's treatment notes comparing them to the
2  characterizations and conclusions Dr. Cruvant states in his assessment.  AR 967.  Specifically, the
3  ALJ stated Dr. Cruvant's opinion "dramatically overstates the claimant's limitations and effectively
4  precludes her from all work activity," clashing with his "treatment notes found in Exhibit 1F which
5  show limited treatment and generally benign physical exam findings with the claimant exhibiting a
6  normal neck, normal grasp, and fairly normal range of motion of the right arm.  The claimant had
7  negative straight leg raises and a normal gait."  *Id*.  The ALJ further found Dr. Cruvant's notes
8  "contain[ed] no imaging reports, however, x-rays of the claimant's shoulder conducted in 2016 were
9  normal while scans of her cervical spine showed only mild to moderate degeneration."  *Id*.
10 Importantly, the ALJ also provided extensive analysis of records collected subsequent to Dr.
11 Cruvant's assessment.  AR 959-962[4]; 962-63.[5]

Plaintiff argues the ALJ "mischaracterize[ed] … the evidence" because "examinations by Dr. Cruvant were not benign," and the scans of her cervical spine the ALJ cites were not "mild."  ECF No. 14 at 30-33.  However, the Court reviewed the relevant records and finds the ALJ's interpretation of the evidence was reasonable.  Indeed, the records during this time show limited treatment with the most pronounced concern being Plaintiff's alcohol consumption and use of pain medication (*see, e.g.,* AR 346, 364), concerns which are not included in Dr. Cruvant's report.  Plaintiff also stated she was able to volunteer with hospice (AR 346), which is inconsistent with Dr. Cruvant's findings.  AR 432-33.  The ALJ also engaged in a detailed, comprehensive review and analysis of Plaintiff's medical records collected after Dr. Cruvant's assessment, which further confirmed the ALJ's conclusions regarding Dr. Cruvant's opinion.  AR 959-63.  The Court reiterates that "[w]hen the evidence before the ALJ is subject to more than one rational interpretation, … [the court] must defer to the ALJ's conclusion."  *Batson*, 359 F.3d at 1198, *citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  Plaintiff does not argue that the ALJ ignored certain evidence in

---

[4]  These records detail and analyze medical records regarding Plaintiff's status post rotator cuff surgery, degenerative disc disease of the lumbar and cervical spine, osteoarthritis of the hips, degenerative enthesopathy of the left humorous, epicondylitis, left trigger fingers, left thumb osteoarthritis, and de Quervain's tenosynovitis from February 2016 onward.

[5]  These records detail and analyze medical records regarding Plaintiff's anxiety/panic disorder, bipolar disorder, and PTSD from 2016 onward.

reaching her conclusions, but rather disagrees with the ALJ's interpretation of the evidence. Just because Plaintiff disagrees with the ALJ's interpretation of the evidence does not mean the ALJ's findings are not supported by "substantial evidence." Therefore, the Court finds the ALJ did not err in rejecting Dr. Cruvant's opinion.

Plaintiff further argues Dr. Cruvant's opinion was rejected because it was "stale." ECF No. 14 at 33. Plaintiff contends the ALJ should have obtained a medical opinion that could have interpreted Plaintiff's most recent raw medical data into functional limitations because the ALJ is obligated to properly develop the record. *Id.* at 33-35. This is a mischaracterization of the ALJ's findings. The ALJ did not reject Dr. Cruvant's opinion because it was too old; rather, it was rejected because it did not align with the objective medical evidence, including Dr. Cruvant's medical notes. As stated above, the ALJ also engaged in a detailed review of the more current medical evidence. Therefore, Plaintiff's argument lacks merit.

    B. <u>The ALJ Properly Considered Ms. Villglobos' Opinion.</u>

Plaintiff argues the ALJ failed to properly weigh Ms. Villglobos' opinion because (1) the ALJ failed to build an accurate and logical bridge between the evidence and her conclusions, and (2) there was evidence in the record supporting Ms. Villglobos' conclusions. ECF No. 14 at 35-40. Initially, "[a] licensed clinical social worker is not an 'acceptable medical source' for establishing a medically determinable impairment." *Salguero v. Astrue*, Case No. CV 11-0290-SP, 2012 WL 71704, at *3 (C.D. Cal. Jan. 9, 2012) (citing 20 C.F.R. §§ 404.1513(a), 416.913(a)); *Turner v. Comm'r*, 613 F.3d 1217, 1223–24 (9th Cir. 2010)). As a result, licensed clinical social workers' opinions are "not entitled to the same standard of review" as physicians' opinions. *Id.* (citing *Turner*, 613 F.3d at 1224). "[I]nstead, the opinions of licensed clinical social workers are reviewed under the standard afforded lay witnesses." *Id.* "Thus, if an ALJ wishes to discount" the opinions of a licensed clinical social worker, "the ALJ must give reasons that are germane … for doing so." *Id.* (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). Inconsistency with the treatment record is a germane reason for discounting a licensed clinical social worker's opinion. *Bourcier v. Saul*, 856 Fed.Appx. 687, 690 (9th Cir. 2021).

9

The ALJ discounted Ms. Villglobos' opinion because it "look[ed] nothing like [Plaintiff's] recent treatment records in which … [Plaintiff] reports doing great/fine with situational stressors." AR 968. The ALJ further found Ms. Villglobos' opinion was "not supported by mental status exam findings" showing Plaintiff had "a normal appearance, speech, and behavior as well as intact cognition, logical thoughts, full orientation, and a euthymic mood." *Id.* The ALJ found treatment notes made by Plaintiff's primary care provider indicated Plaintiff "consistently denied adhedonia and panic attacks and her thought content and mood were consistently intact." *Id.* (citations omitted). The Court reviewed the Administrative Record, paying particular attention to the mental health treatment records at AR 1198-1226 (November 1, 2019 to April 21, 2020) and 1807-1844 (September 30, 2021 to July 5, 2022) because they are the mental health records closest in time to Ms. Villglobos' opinion, which is dated June 13, 2022. The Court finds the ALJ's characterizations of Ms. Villglobos' opinion and comparisons to the Administrative Record are accurate.

Plaintiff provides multiple citations to the record attempting to discredit the ALJ's analysis, but most of her citations are from years prior to Ms. Villglobos' opinion date.[6] With respect to the more recent medical records Plaintiff cites, her descriptions do not accurately reflect the generally positive nature of these appointments. AR 1209-10, 1212-13, 1218-19, 1221-22, 1224-25, 1515-16, 1817, 1821, 1827, 1831, 1837, 1841. Plaintiff argues that she "continued to endorse anxiety, lack of regular bathing, and stability on medications," during her appointments in 2020 (ECF No. 14 at 40, *citing* AR 1209-24); however, these appointments show Plaintiff repeatedly reported she was "doing fine," was taking her medication as directed and it was working, and denied any significant mental health issues.[7]

---

[6] By way of example, Plaintiff cites certain 2016 records. ECF No. 14 at 39 (citing AR 421-22).

[7] AR 1209-10 (Plaintiff "says that she is doing fine and medication working and takes medication as ordered, has been helpful," and Plaintiff's "mental status has no gross abnormalities."); AR 1212-13 (Plaintiff "says that she has been doing fine," and Plaintiff has "no apparent serious mental status abnormalities."); AR 1215-16 (Plaintiff "says that she has been doing fine, taking her medication, … says that she sleeps [with] no nightmares, [better] than before, getting things done," and she has "no apparent serious mental status abnormalities."); AR 1218-19 (Plaintiff "stated that she is doing fine; she says that she has been stable, no suicidal thoughts, no side effects from the medication, and stated that she sleeps well and no issues with medication," and Plaintiff's "mental status [had] no gross abnormalities."); AR 1221-22 (Plaintiff stated she has "been taking the medication as prescribed, feels much better than before, with no panic attacks, and thinks the medication is helping," Plaintiff "stated that she is doing fine; she says that she has been stable, no suicidal thoughts, no side effects from the medication, and she stated she sleeps well with no issues with medication, other than increased anxiety," and Plaintiff's "mental status ha[d] no gross abnormalities."); AR 1224-25 (Plaintiff stated

10

Plaintiff further argues that her medical records reflect "[s]he had ongoing issues with family members and friends in December 20[2]1 and complained of increased stress despite taking her medications as directed." ECF No. 14 at 40, *citing* AR 1817, 1821. In contrast, Plaintiff "stated she was doing great" at both of the appointments cited. AR 1817, 1821. Plaintiff also claims her records show "[h]er stress and depression persisted [in] 2022 … and she endorsed a lot of medical issues." ECF No. 14 at 40, *citing* AR 1827, 1831, 1837, and 1841. In contrast, records from these appointments show Plaintiff reported that she was continuing to do "great." AR 1827, 1831, 1837, 1841.

In sum, the Court finds from approximately November 1, 2019 through July 5, 2022, which correlate to the records dated closest in time to when Ms. Villglobos penned her opinion, Plaintiff consistently made positive reports to her doctor regarding how she felt and the efficacy of her medication in managing her symptoms. AR 1198-1226, 1807-1844. The Court finds that the ALJ provided a "logical bridge" between the evidence and her conclusions. When a licensed clinical social worker's opinion is inconsistent with the treatment record, as is the case here, there is a germane reason for rejecting it. The Court finds the ALJ did not err in rejecting Ms. Villglobos' opinion.[8]

## VI.   Order

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Reversal and Remand (ECF No. 14) is DENIED.

IT IS FURTHER ORDERED that Defendant's Cross-Motion to Affirm (ECF No. 19) is GRANTED.

---

she "is doing fine and stable on the medication, stated that no side effects from the drug," and her "mental status has no gross abnormalities.").

[8] Plaintiff also argues that the ALJ inappropriately rejected Ms. Villglobos's opinion because it relied on Plaintiff's subjective symptom reports, and the Court did not adequately analyze her subjective reports. ECF No. 14 at 41-42. However, Ms. Villglobos' reliance on Plaintiff's subjective reports, and the credibility of those reports, was not part of the ALJ's explanation for rejecting Ms. Villglobos' opinion. AR 968. Therefore, this argument is irrelevant.

11

1  IT IS FURTHER ORDERED that the Clerk of Court must enter judgment in favor of Defendant and close this case.

DATED this 16th day of February, 2024.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE